UNITED STATES v. CHIN CHONG PONG.

(District Court, S. D. New York. November 29, 1911.)

ALIENS (§ 28*)—DEPORTATION PROCEEDINGS—CHINESE—EXCLUSION.

Chinese Exclusion Act (Act May 6, 1882, c. 126, 22 Stat. 60 [U. S. Comp. St. 1901, p. 1307] as amended) § 6, provides that a Chinese person, other than a laborer, entitled by the treaty to enter the United States, shall obtain the permission of and be identified as so entitled by the Chinese government, the certificate to be viséed by the United States diplomatic representative in the foreign country from which such certificate is issued, which certificate shall be prima facie evidence of the facts set forth therein. Defendant was a member of a Mexican mercantile firm having a capital of $50,000 American money, defendant's interest being $10,000, which he inherited from his father. The firm's business amounted to $150,000 a year. Defendant was sent into the United States with instructions to report as to advisability of opening branch stores in the United States, and, before leaving Mexico, secured a certificate required by section 6 in proper form, on which he was admitted at the port of New York. He received remittances from his firm aggregating $400 in January, February, and March, 1911, but while he was visiting a friend or relative who operated a laundry he was arrested as unlawfully in the country, and there was evidence that at times he assisted in the laundry. *Held*, that defendant was not a laborer, but

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that, pursuant to the certificate, he was entitled to remain in the United States.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 88–90; Dec. Dig. § 28.*

What Chinese persons are excluded from the United States, see note to Wong Yon v. United States, 104 C. C. A. 538.]

Deportation proceedings by the United States against Chin Chong Pong. From a deportation order, defendant appeals. Reversed, and defendant ordered discharged.

Henry A. Wise, U. S. Atty., and Roger H. Clarke, Asst. U. S. Atty. James A. Donegan, for defendant.

HOLT, District Judge. This is an appeal from an order of a United States commissioner, adjudging that the defendant be deported from the United States to China. The ground of the charge against him is that he is a Chinese laborer in this country without the certificate prescribed by the statute, authorizing his residence here. His defense is that he is a merchant, authorized by a proper certificate to come to this country. The defendant is a member of the mercantile firm of Ah Sing & Co., of El Oro, Mex. That firm has a capital of $100,000 in Mexican money, equivalent to $50,000 American money. The defendant has an interest in that firm of $20,000 in Mexican money, which he inherited from his father, who at the time of his death was a member of the firm. The firm is engaged in a general mercantile business, amounting to about $150,000 a year. The defendant testifies that he was sent by his firm to the United States for the purpose of investigating trade conditions in this country, with instructions to report as to the advisability of opening branch stores in the United States. Before leaving Mexico, he secured a passport issued to him by the charge d'affaires of the Chinese legation in Mexico, which passport was certified to according to law by the consul general of the United States of America stationed in Mexico. This certificate states that the consul has examined into the truth of the statements set forth in the certificate, and finds upon examination that the same are true, and that the signature and seals of the certificate are genuine. Upon this passport the defendant came from El Oro to Vera Cruz, Mexico, and from there took ship to New York, where he landed on December 3, 1910. His passport was examined by the immigration inspector at the port of New York, who, after such examination, admitted the defendant as a person legally entitled to come to the United States. When the defendant left El Oro, he had on his person about $160. Upon his arrival in New York, he still had in his possession about $60. During the three months prior to his arrest in this country, he received from his firm in El Oro various sums, amounting in the aggregate to $400, being $150 in a letter dated January 2, 1911, $150 in another letter dated February 11, 1911, and $100 in another letter dated March 28, 1911. Upon his arrival in New York, the defendant passed about a month with the firm of Hing Lum Chan & Co., No. 4 Doyer street, during which time he

made investigations in the city of New York, as to the advisability of establishing a branch of his Mexican store here. Thereafter he started to make investigations in other cities, with a view to finding suitable locations in which to establish branch stores. With this object, he went to Albany, Amsterdam, Schenectady, and Saugerties. His testimony is that on one of these trips he met a person, whom he calls a cousin, who resided in Saugerties, and who invited the defendant to pay him a visit in Saugerties. The defendant accepted the invitation, and went to Saugerties, where he stayed about a month with this cousin, who kept a laundry, while visiting from time to time various places in that region. After being there about a month, he was arrested; the government's claim being that he was a laborer employed in his friend's laundry. To support that claim, the government produces the evidence of several witnesses to the effect that they saw the defendant in the laundry, and that he often took in laundry from customers, and handed out laundry to customers, and received money for the laundry. Two witnesses testify that they saw the defendant ironing in the laundry several times. The defendant testifies himself and gives evidence by the keeper of the laundry and a man employed there that he was never paid anything for his services, that he did not know how to iron clothes, and that a beginner in learning laundry work is never permitted at first to attempt to iron clothes because of the danger of spoiling them.

Section 6 of the Chinese exclusion act (May 6, 1882, c. 126, 22 Stat. 60 [U. S. Comp. St. 1901, p. 1307] as amended) provides that any Chinese person, other than a laborer, entitled by the treaty to come into the United States, shall obtain the permission of and be identified as so entitled by the Chinese government, to be evidenced by a certificate issued by such government, which certificate shall be viséed by the indorsement of the diplomatic representative of the United States in the foreign country from which such certificate is issued, and that such certificate shall be prima facie evidence of the facts set forth therein, but may be controverted, and the facts therein stated disproved by the United States authorities. The defendant in this case had a genuine certificate, executed by the Chinese representative in Mexico, and viséed by the American consul there, and no question is made as to its genuineness or sufficiency. It is therefore prima facie evidence of the defendant's right to enter and remain in this country, and of the facts stated in it, the substantial facts being that the defendant is a merchant, having a one-fifth interest in a business with a substantial capital, and that the object of his coming to this country was to determine whether to establish a branch of his business here. In my opinion the evidence fails to establish that the defendant was a laborer at any time in this country. The proprietor of the laundry in Saugerties and the defendant testify that he never received any pay while staying at Saugerties, and that whatever he did in the way of attending to customers was a mere friendly act of assistance by a guest to his host. But the conclusive evidence in this case in my opinion is the fact that during the three months which passed after the defendant came to this country and before his ar-

rest he received letters from a member of the firm in Mexico, of which firm he is a member, making inquiry about his progress in selecting a place to do business, and inclosing three separate drafts, amounting in the aggregate to $400 remitted to him from Mexico. The letters containing these drafts are produced, and also the envelopes, bearing the official Mexican postmarks. The bankers in New York, where the drafts were cashed, are produced, and swear that they cashed them. If the defendant was in fact a mere laborer, in my opinion he would not have been in receipt of such letters and of such remittances.

The decision of the commissioner directing the deportation of the defendant is reversed, and the defendant discharged from arrest.